Carl Lee WATKINS, Appellant,

v.

The STATE of Texas, Appellee.

No. 06–04–00068–CR.

Court of Appeals of Texas, Texarkana.

Submitted Jan. 6, 2005.

Decided Jan. 7, 2005.

Stephen C. Taylor, Humble, for appellant.

Carl Lee Watkins, Angleton, pro se.

Marcus D. Taylor, Wood County Dist. Atty., Quitman, for appellee.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Justice CARTER.

Carl Lee Watkins has appealed the trial court's denial of his motion for post-conviction DNA testing. *See* TEX.CODE CRIM. PROC. ANN. arts. 64.01–.05 (Vernon Supp. 2004–2005). On November 30, 2004, Watkins' appellate counsel filed an *Anders*[1] brief in which he professionally discussed the record, described the issues reviewed, and concluded there were no arguable grounds for appeal. As required by *Anders*, counsel also filed a motion to withdraw, sent Watkins a copy of that brief, and informed Watkins of his rights to review the record and to file a pro se response. Watkins submitted his response December 16, 2004.

We have reviewed the record and the briefs, and we agree that the record before us demonstrates no error. Accordingly, we affirm the trial court's judgment.

## I. Procedural History

In March 1993, a Wood County jury found Watkins guilty in four separate cases that charged the same offense—aggravated sexual assault of a child.[2] The

---

1. *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).

2. The first and fourth indictments involved the same victim: the first indictment involved an offense alleged to have occurred July 15, 2003, whereas the fourth indictment concerned an offense that allegedly occurred one month later. The second and third indictments each involved a second victim; the third indictment addressed an offense occur-

trial court sentenced Watkins to ninety-nine years' imprisonment in each case in accordance with the jury's punishment verdict. Watkins appealed those convictions to this Court. In separate, unpublished opinions, this Court affirmed the trial court's judgments in each case. *See, e.g.,* *Watkins v. State,* No. 06–95–00016–CR (Tex.App.-Texarkana Apr. 12, 1996, no pet.) (not designated for publication).

On February 11, 2002, Watkins filed requests for post-conviction DNA testing and for the appointment of counsel. *See* Tex.Code Crim. Proc. Ann. art. 64.01(a), (c). Watkins' motion for DNA testing was not accompanied by "an affidavit, sworn to by the convicted person, containing statements of fact in support of the motion," even though such an affidavit is required by Chapter 64.[3] *See* Tex.Code Crim. Proc. Ann. art. 64.01(a).

On May 10, 2004, the trial court issued findings of fact and conclusions of law regarding Watkins' request for post-conviction DNA testing. The trial court specifically found (1) there was no physical or biological evidence recovered in any of Watkins' four cases, and (2) Watkins had failed to establish, by a preponderance of the evidence, that a reasonable probability existed that he would not have been prosecuted or convicted in any of the four cases had exculpatory results been obtained through DNA testing, because no biological material was ever recovered. Based on those findings and conclusions, the trial court denied Watkins' motion.

## II. DNA Testing

### A. Standard of Review

We review a trial court's denial of a motion for post-conviction DNA testing under a bifurcated process. *Rivera v. State,* 89 S.W.3d 55, 59 (Tex.Crim.App. 2002) (citing *Guzman v. State,* 955 S.W.2d 85 (Tex.Crim.App.1997)); *see also Green v. State,* 100 S.W.3d 344, 344 (Tex.App.-San Antonio 2002, pet. ref'd). We afford almost total deference both to the trial court's determination of historical fact and to its application of law-to-fact issues that turn on credibility and demeanor. *Rivera,* 89 S.W.3d at 59; *Green,* 100 S.W.3d at 344. But we review de novo all other application of law-to-fact issues. *Rivera,* 89 S.W.3d at 59; *Green,* 100 S.W.3d at 344. This de novo review usually includes the ultimate issue in post-conviction DNA testing cases: i.e., whether "a reasonable probability exists that exculpatory DNA would prove ... innocence." *Rivera,* 89 S.W.3d at 59.

To obtain post-conviction DNA testing, the convicted person must establish by a preponderance of the evidence that a reasonable probability exists that he or she would not have been prosecuted or convicted if "exculpatory results had been obtained through DNA testing."[4] *Id.* (citing Tex.Code Crim. Proc. Ann. art. 64.03(a)(1)(A)(i) & (2)(A)). This requirement is not a two-part test. "The convicted person is not required to show *both* that a reasonable probability exists that the

---

ring July 15, 2003, whereas the second indictment concerned an offense occurring August 15, 2003.

**3.** Inasmuch as Watkins' motion for post-conviction DNA testing failed to meet this requirement, the trial court could have dismissed Watkins' application for statutory noncompliance. *See* Tex.Code Crim. Proc. Ann. art. 64.01(a); *see generally Warren v. State,* 126 S.W.3d 336, 337 (Tex.App.-Dallas 2004,

no pet.) (motion for DNA testing must be accompanied by affidavit sworn to by convicted person).

**4.** Additionally, "Article 64.03(a) only permits a trial court to order DNA testing if the court finds that identity was or is an issue in the case." *Green,* 100 S.W.3d at 344 (citing Tex Code Crim. Proc. Ann. art. 64.03(a)(1)(B)).

person would not have been prosecuted *and* that the person would not have been convicted." S.J. OF TEX., 77th Leg., R.S. 995 (2001) (emphasis added), <http://www.capi­tol.state.tx.us/sjrnl/77r/pdf/4–2.pdf>, at *25. Exculpatory evidence is that "tending to establish a criminal defendant's innocence." BLACK'S LAW DICTIONARY 597 (8th ed.2004).

 The statutory requirement that testing results be exculpatory is not met if the DNA evidence would "merely muddy the waters." Instead, the evidence must tend to prove the defendant's innocence. *Rivera,* 89 S.W.3d at 59 (citing *Kutzner v. State,* 75 S.W.3d 427, 439 (Tex.Crim.App. 2002)). Stated differently, DNA testing must conclusively outweigh all other evidence of the convicted's guilt. *Rivera,* 89 S.W.3d at 59; *Thompson v. State,* 95 S.W.3d 469, 472 (Tex.App.-Houston [1st Dist.] 2002, pet. ref'd).

### B. Analysis

 On appeal, Watkins' pro se response brief does not challenge the trial court's findings of fact and conclusions of law. Instead, Watkins has asserted (1) he received ineffective assistance of counsel at the original trial, and (2) he was denied his right to a speedy trial in 1992 and 1993. Such issues would not directly or indirectly relate to the trial court's findings under Article 64.03 or 64.04; therefore, these issues are not cognizable in a Chapter 64 appeal. *See* TEX.CODE CRIM. PROC. ANN. art. 64.05 (appeals of post-conviction DNA testing judgment); *see also McIntosh v. State,*

110 S.W.3d 51, 52–53 (Tex.App.-Waco 2002, no pet.) (appellate court lacked jurisdiction over denial of appointment of counsel; appointment came pursuant to Article 64.01 and appellate court had jurisdiction only over determinations pursuant to Articles 64.03 and 64.04). Accordingly, we lack jurisdiction to consider the issues raised by Watkins in his pro se responsive brief.

 Generally, when appellate counsel files an *Anders* brief, we have a duty to review the record for fundamental error. *See, e.g., Lopez v. State,* 708 S.W.2d 446, 448–49 (Tex.Crim.App.1986); *Sanchez v. State,* 788 S.W.2d 636, 637 (Tex.App.-Corpus Christi 1990, no pet.). We see no reason why the rationale behind that policy should not also extend to cases where the appeal concerns the trial court's ruling on an application for post-conviction DNA testing, and the appellant's counsel certifies to this Court that the appeal is frivolous. In such situations, we will review the record related to the appellant's request for post-conviction DNA testing for fundamental error.[5] After reviewing the record, we find no fundamental error.

The trial court in this case made a factual finding that no biological material was ever recovered in connection with any of Watkins' cases. Watkins neither challenges this finding on appeal, nor does the record before us show that Watkins offered any evidence to the contrary. Accordingly, without evidence that there is any biological material to be tested, we cannot say the trial court erred by denying

---

5. Our extension of the fundamental error doctrine to DNA testing cases should not be read to extend to fundamental errors that occurred at the original trial or that were not otherwise part of the trial court's decision to deny post-conviction DNA testing. Such a limitation on the scope of our review is consistent with the Texas Legislature's conveyance of jurisdiction

to review the appeal of post-conviction DNA testing judgments, *see* TEX.CODE CRIM. PROC. ANN. art. 64.05, and the principle that this Court may exercise jurisdiction only to the extent granted by either the Texas Constitution or by statute, *see Ex parte Wood,* 125 S.W.3d 805, 806 (Tex.App.-Texarkana 2004, orig. proceeding).

Watkins' motion for post-conviction DNA testing.[6]

## III. Conclusion

Watkins' application did not contain the statutorily required affidavit. *See* TEX. CODE CRIM. PROC. ANN. art. 64.01(a). The application did not allege what evidence, if any, he believed should be subjected to DNA testing. *See* TEX.CODE CRIM. PROC. ANN. art. 64.01(a), (b). The motion made no claim that any biological evidence in this case was not previously subjected to DNA testing or that new testing techniques would provide more accurate results. *See* TEX.CODE CRIM. PROC. ANN. art. 64.01(b). Nor did Watkins attempt to show in either the trial court or in his brief to this Court that DNA testing would prove his innocence. *See Rivera,* 89 S.W.3d at 59. Accordingly, the trial court properly denied Watkins' motion for post-conviction DNA testing

We affirm the trial court's judgment.

---

6. We further note that the record before us contains a five-page confession (entered into evidence at the 1993 trial) in which Watkins admitted touching the two victims between their legs while the three were wrestling in July 1993. Later in the same document, Watkins further confessed putting his hands inside the victims' underwear and rubbing their sexual organs in August 1993.