

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-10-00226-CR

_____

ERIC CARSON WYNN, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 124th Judicial District Court
Gregg County, Texas
Trial Court No. 27805-B

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Moseley

MEMORANDUM OPINION

In 2000, Eric Carson Wynn pled guilty to aggravated sexual assault, this plea resulting in his conviction; he was sentenced to forty years' imprisonment in the Texas Department of Criminal Justice—Institutional Division. In 2011, Wynn's motion for the appointment of counsel in connection with his request for further DNA testing was granted, together with an expert in DNA testing. After two hearings, the trial court denied Wynn's request for new DNA testing, this order giving rise to the instant appeal. Wynn claims the trial court erred in denying new DNA testing and further claims that Article 38.35 of the Texas Code of Criminal Procedure is unconstitutional as applied to him because it permitted DNA evidence from a nonaccredited laboratory to be used against him. *See* TEX. CODE CRIM. PROC. ANN. art. 38.35 (West Supp. 2011). We affirm the judgment of the trial court.

## I.      Background

Prior to his conviction, Wynn never denied having committed the crime of aggravated sexual assault as he had been charged; on the contrary, he confessed to the crime.[1] DNA testing, conducted in connection with the investigation of the assault, showed results consistent with Wynn's confession. The DNA test report, authored by the Texas Department of Public Safety

---

[1]The stipulation of evidence signed by Wynn states, in part, that

> on the 19th day of March, 2000, in the County of Gregg and State of Texas, I, ERIC CARSON WYNN did then and there intentionally and knowingly cause the penetration of the female sexual organ of [the victim] by the defendant's sexual organ, without the consent of [the victim], and the defendant did then and there by acts and words threaten and place [the victim] in fear that death or serious bodily injury would be imminently inflicted on [the victim] and said acts and words occurred in the presence of [the victim] . . . as charged in the information.

Garland Crime Laboratory (Garland DPS), was offered as a part of the stipulated evidence.   The

report concluded that

> [t]he DNA profile recovered from the sperm fraction of the vaginal swab is consistent with the DNA profile of the suspect.   Suspect Wynn cannot be excluded as the contributor of this stain.   The probability of observing this DNA profile is approximately 1 in 1.069 quadrillion for Caucasians, 1 in 79.87 quadrillion for Blacks, and 1 in 997 trillion for Hispanics.   Based on these probabilities, the suspect is the source of the stain.

In his motion for further DNA testing,[2] Wynn alleged for the first time that he did not

commit the crime and maintained that the requested Y-STR test would substantiate his claim of

innocence.[3]   At Wynn's request, the court appointed Orchid Cellmark, Inc. as an independent

DNA expert in order to answer a specified list of questions regarding the differences between STR

and Y-STR testing and how test results might differ between the two.   Cellmark's report indicated

that Y-STR testing (not available in 2000) "targets only male DNA, ignoring all of the female

DNA present in a sample."   Further, Y-STR testing "is extremely useful in obtaining male

profiles from samples that have very limited quantity of male DNA or samples where DNA from

multiple male sources may be present."   The issue of multiple sperm donors was emphasized by

---

[2]The trial court denied Wynn's initial pro se motion for DNA testing in January 2002.   Wynn resubmitted his initial motion in March 2002.   After the motion as resubmitted was denied in April 2002, Wynn filed a new motion for DNA testing and request for appointment of counsel.   This motion was denied in December 2004.   In January 2007, Wynn filed a petition for appointment of counsel, which was granted.   In September 2009, the trial court signed an order permitting withdrawal of counsel and appointment of new counsel.

[3]The previous DNA test, performed in 2000, was an STR test.   Wynn now requests the more scientifically advanced Y-STR test to prove his innocence.

Wynn, who alleges the victim was sexually active with an Hispanic male at the time of the alleged assault.[4]

In November 2010, a hearing was conducted on Wynn's motion for DNA testing. At that hearing, testimony from the complaining witness, as given at the plea hearing in 2000, was read into the record. The complainant testified that at the time of the hearing, she was five months pregnant as a result of the assault and identified Wynn as the father of the child. Counsel for Wynn argued that Y-STR testing should be ordered to determine whether there were multiple contributors to the DNA sample recovered from the victim[5] and whether, using more refined testing, Wynn was a contributor to that sample. The trial court took the matter under advisement

---

[4]The report indicates that Y-STR testing may be a better way to detect a mixture of multiple sperm contributors:

> If the DNA is of a limited quantity from the multiple sperm donors, it would be very unlikely to identify the multiple sperm donors using conventional STR testing. It may be very difficult to identify the number of sperm donors and to identify them using STR testing even if the DNA is of sufficient quantity. . . .
> Since Y-STR testing only targets male DNA, it may be easier to identify the number of male contributors in a sample using Y-STRs. Although it is not always possible, it is more likely to identify the number of male contributors in the sample using Y-STRs rather than using conventional STRs.

[5]In Wynn's affidavit attached to his motion for new trial, he claims that he did not commit aggravated sexual assault and that at the time of the alleged assault, the victim was sexually active "with a man named James Hill, who was part Hispanic." He further claims the child allegedly conceived as a result of the assault was in fact fathered by Hill. Wynn claims his guilty plea was entered because he feared receiving a life sentence.

and reconvened the hearing the following month.   The trial court thereafter denied the motion for

DNA testing, making multiple findings of fact.[6]

---

[6]The findings of fact are:

1.  Defendant, Eric Carson Wynn ("Wynn") pled guilty to aggravated sexual assault of [the victim] on August 11, 2000 arising out of an offense alleged to have occurred on or about March 19, 2000.

2.  [The victim] testified that she had met Wynn earlier in the evening of the assault, and was able to identify Wynn as her attacker, independent of DNA evidence.

3.  Wynn's blood was drawn and compared to biological materials recovered from the sexual assault collection kit from victim and submitted to the Garland DPS Laboratory, which submitted the evidence to forensic DNA testing, and specifically, STR profiling.

4.  STR testing continues to be an accredited and commonly used forensic DNA testing procedure.

5.  The Garland DPS Laboratory Report received in evidence at the trial, without objection, states "The DNA profile recovered from the sperm fraction of the vaginal swab is consistent with the DNA profile of the Suspect.   Suspect Wynn cannot be excluded as the contributor of this stain.   The probability of observing this DNA profile is approximately 1 in 1.069 quadrillion for Caucasians, 1 in 79.87 quadrillion for Blacks, and 1 in 997 trillion for Hispanics.   Based on these probabilities, the suspect is the source of this stain."

6.  Wynn is a Caucasian male.

7.  Wynn has not provided any credible evidence to support his contention that the prior report of Garland DPS laboratory should be subjected to further review.

8.  The Garland Laboratory was not accredited at the time the Report received in evidence was prepared.

9.  The Garland Laboratory was subsequently accredited in 2002, a year before accreditation was required by law.

10. Y-STR DNA profiling, as a forensic DNA testing procedure, "is specific to obtaining only male profiles from a sample," and "would be useful in obtaining profiles from samples that have very limited quantity of male DNA or samples where DNA from multiple male sources may be present."

5

The trial court concluded that Wynn failed to establish that the Y-STR testing technique would be reasonably likely to provide results "that are more accurate and probative than the STR forensic test conducted in 2000 as set forth in the Garland Laboratory Report received in evidence in the trial of this case."[7] We agree with that conclusion.

---

11. There exists no evidence or allegations before the Court that there was not a sufficient quantity of male DNA in the sample tested.

12. There exists no evidence or allegations before the Court that there were multiple male contributors of DNA in the sample tested.

13. Identity was not an issue at the trial of the case, and unrebutted testimony at trial or found in stipulated evidence established that Wynn was known to the victim . . . . Wynn also judicially confessed to the crime of sexual assault at the time the Plea of Guilty was accepted by the Court.

14. Wynn has made identity an issue by filing his Motion for Further DNA Testing.

[7]The entirety of the trial court's conclusions of law are:

1. Under Section 64.01(b)(2), of the Code of Criminal Procedure, Wynn can "request DNA testing only of evidence . . . although previously subjected to DNA testing, can be subjected to testing with newer testing techniques that provide a reasonable likelihood of results that are more accurate and probative than the results of the previous test."

2. Under Section 64.03 of the Code of Criminal Procedure, a convicting court may order forensic DNA testing "only if:  1) the Court finds that:  A) the evidence: i) still exists and is in a condition making DNA testing possible; and ii) has been subjected to a chain of custody. . .; and B) identity was or is an issue in the case; and 2) the convicted person establishes by a preponderance of evidence that:  A) the convicted person would not have been convicted if exculpatory results had been obtained through DNA testing. . . ."

3. Identity was not an issue at the trial of this case.

4. Wynn's identity at trial was proved by means independent of the DNA test results, specifically, the unrebutted statements of the victim . . . . At the time Wynn entered his Plea of Guilty, the victim's allegations were unchallenged.

6

## II.     Analysis

### A.     The Trial Court Did Not Abuse Its Discretion in Refusing to Permit Additional DNA Testing

Wynn initially claims the trial court abused its discretion in refusing to permit additional DNA testing because Y-STR testing was not available at the time of the offense, there was evidence that implicates more than one DNA donor, and Y-STR testing would provide the means of distinguishing between or among multiple contributors of DNA.

The denial of a request for post-conviction DNA testing is reviewed under a bifurcated standard. *Rivera v. State*, 89 S.W.3d 55, 59 (Tex. Crim. App. 2002). We defer to the trial court's findings of fact when they are supported by the record, and defer to the trial court's application of

---

5.     Wynn has subsequently made identity an issue by filing his Motion for Further DNA Testing and denying he had sexual relations with the victim . . . . *See Blacklock v. State*, 235 S.W.3d 231 (Tex. Crim. App. 2007).

6.     STR testing continues to be an accredited and commonly used forensic DNA testing procedure.

7.     Wynn has not established by a preponderance of the evidence that the forensic testing procedure known as Y-STR would be reasonably likely to provide results that are more accurate and probative than the STR forensic test conducted in 2000 as set forth in Garland Laboratory Report received in evidence in the trial of this case.

8.     Wynn has not established by a preponderance of the evidence that the STR forensic DNA test conducted in 2000 as set forth in the Garland Laboratory Report received in evidence in the trial of this case was not reliable.

9.     The provisions of Art. 38.35 TEX. CODE CRIM. P. requiring accreditation of crime laboratories was effective as to those offenses committed after its effective date.

10.     The Garland Laboratory was not required to be accredited to conduct forensic DNA testing of DNA arising out of an offense occurring on or about March 19, 2000.

11.     The interests of justice do not require further DNA testing.

7

law to fact questions that turn on credibility and demeanor. *Esparza v. State*, 282 S.W.3d 913, 921 (Tex. Crim. App. 2009). We apply a de novo standard of review to pure legal issues. *Id.* We will sustain the decision of the trial court if it is correct on any legal theory applicable to the case. *State v. Ross*, 32 S.W.3d 853, 855–56 (Tex. Crim. App. 2000). This de novo review usually includes the ultimate issue in post-conviction DNA testing cases: i.e., whether "a reasonable probability exists that exculpatory DNA tests would prove . . . innocence." *Rivera*, 89 S.W.3d at 59.

Chapter 64 of the Texas Code of Criminal Procedure prescribes how a convicted person may obtain an order for post-conviction DNA testing. Such testing is permitted when the evidence still exists in a condition conducive to DNA testing, the evidence has been subjected to a reliable chain of custody, and identity was or is an issue in the case. TEX. CODE CRIM. PROC. ANN. art. 64.03(a)(1) (West Supp. 2011); *Hooks v. State*, 203 S.W.3d 861, 863 (Tex. App.—Texarkana 2006, pet. ref'd). There is no dispute these requirements are satisfied.

Because DNA testing was conducted in 2000, additional testing can be conducted only if the biological material in possession of the State during trial can be subjected to testing with newer testing techniques that provide a reasonable likelihood of results that are more accurate and probative than the results of the 2000 test. *See* TEX. CODE CRIM. PROC. ANN. art. 64.01(b)(2) (West Supp. 2011). In addition to that requirement, the convicted person must establish, by a preponderance of the evidence, that a reasonable probability exists that he "would not have been

8

convicted if exculpatory results had been obtained through DNA testing." TEX. CODE CRIM. PROC. ANN. art. 64.03(a)(1)(A)(i), (2)(A) (West Supp. 2011). This burden is met "if the record shows that exculpatory DNA test results, excluding the defendant as the donor of the material, would establish, by a preponderance of the evidence, that the defendant would not have been convicted." *Ex parte Gutierrez*, 337 S.W.3d 883, 899 (Tex. Crim. App. 2011). However, if testing results would "merely muddy the waters," the statutory requirement that testing results be exculpatory is not met. *Rivera*, 89 S.W.3d at 59; *Watkins v. State*, 155 S.W.3d 631, 634 (Tex. App.—Texarkana 2005, no pet.).

Wynn initially suggests that the results of STR testing[8] performed in 2000 by the Garland DPS are inaccurate. This supposition is based on an incorrect interpretation of the report. Wynn claims that because the report details the probabilities that the DNA specimen taken from him would match another Caucasian, as opposed to a black or an Hispanic, is problematic. Wynn argues that if the true source of the stain with which Wynn's DNA was matched is that of a black or an Hispanic, he would be excluded as the source based on the probabilities listed. We find no merit in this reasoning.[9] Moreover, there is no evidence the STR testing procedure utilized in

---

[8] The DNA analysis utilized in 2000 was known as short tandem repeats (STR) using poly-chain reaction amplification.

[9] Wynn appears to argue that the Garland DPS report reveals the existence of three possible donors—a Caucasian individual, an Hispanic individual, and a black individual. The report merely lists probabilities the DNA would match each of three ethnic groups; it does not point to the existence of three possible sperm donors. The report indicates that if the DNA donor was Caucasian, the odds that another donor exists with the same DNA in the Caucasian group are one in 1.069 quadrillion. Likewise, if the DNA donor was black, the odds that another donor exists with the same DNA in the black group are one in 79.87 quadrillion. Finally, if the DNA donor was Hispanic,

9

2000 was not scientifically reliable. While STR testing has improved since 2000, those improvements do not relate to the testing in this case and do not render the previous testing technique which was employed as unreliable.[10]

Wynn maintains, however, that the results of Y-STR testing would be more accurate and probative than the results of the 2000 STR test, and further claims that this newer test will determine the existence of another donor, thus exculpating him from the crime.[11] Wynn's theory is that the victim became pregnant by a man of Hispanic origin, one with whom he alleges that she was sexually active in March 2000. Wynn further surmises that when the victim (who had a religious upbringing) discovered that she was pregnant, she simply fabricated the story that Wynn had assaulted her in order to avoid the embarrassment that a public revelation of her sexual conduct would precipitate. In his affidavit, Wynn swore that "I did not commit aggravated sexual assault on, or have sex with, [the victim] on or about the date alleged in the Information in this case or at any other time." Wynn does not claim the Y-STR test is needed because he and the Hispanic

the odds that another donor exists with the same DNA in the Hispanic group are one in 997 trillion. These numbers indicate that if Wynn was Hispanic, the odds that he was the source of the stain are marginally less. The probability of another donor with the same DNA is least among the Caucasian group.

[10]Improvements in STR testing have to do with degraded DNA:

A new test called the mini-STR test is now available which tests for degraded DNA. This technique allows forensic scientists to develop DNA profiles from very old samples that have been severely degraded over time due to environmental factors and storage conditions.

[11]The only evidence pointing to the possibility of another donor is Wynn's affidavit. While Wynn alleges the victim was sexually active with a man of Hispanic origin, there is no evidence the victim engaged in sexual relations with this person during the time frame of the aggravated sexual assault on the victim.

10

man both had sex with the victim. Instead, Wynn claims that he never engaged in sexual activity with the victim, but the Hispanic man did.

The STR test conducted in 2000 by the Garland DPS could not rule Wynn out as the donor of the sperm. The report states, "Suspect Wynn cannot be excluded as the contributor of this stain. The probability of observing this DNA profile is approximately 1 in 1.069 quadrillion for Caucasians, 1 in 79.87 quadrillion for Blacks, and 1 in 997 trillion for Hispanics. Based on these probabilities, the suspect is the source of this stain." The statute requires a reasonable likelihood of more accurate and more probative test results from a newer testing technique. When previous DNA testing has inculpated a convicted person, a newer test will either confirm the accuracy of the previous test or impugn the accuracy of the previous test by excluding the convicted person as the source of the stain. Wynn contends the Y-STR test could, in fact, impugn the accuracy of the previous test by excluding him as the source of the stain. Yet, the Cellmark report did not support that conclusion in this case. The report explained that conventional STR testing, as conducted in Wynn's case in 2000, refers to

> testing of the Short Tandem Repeats using Polymerase Chain Reaction (PCR). Short Tandem Repeats are short segments of DNA sequence that are repeated multiple times in an individual's DNA sequence. The number of times a specific DNA sequence is repeated differs from person to person. That different repetition number makes the DNA profile of each individual unique to him/herself, except for identical twins who share identical DNA profiles. . . . PCR works like a Xerox copy machine making multiple copies of the targeted DNA sequence. This DNA can be analyzed using specialized genetic analyzers and the DNA profile of an individual can then be determined. Y-STR testing is a technique . . . very similar to STR testing but different in that Y-STR testing targets only male DNA, ignoring all of

11

the female DNA present in a sample. Whereas, STR testing targets human DNA in a sample, both male and female, Y-STR testing targets human male DNA only. The same PCR technique used for STR testing is used for Y-STR testing to target specific repeats that are only located on the Y-chromosome which is exclusive to males.

Because Y-STR targets only male DNA, "Y-STR testing is extremely useful in obtaining male profiles from samples that have very limited quantity of male DNA or samples where DNA from multiple male sources may be present." Otherwise, "[t]he only difference is that STR testing obtains profiles from all human DNA present in a sample (male and female) whereas Y-STR testing obtains only a male profile from a sample disregarding all of the female DNA."[12]

Here, there is no claim of limited male DNA which would necessitate use of Y-STR testing. While Wynn claims this test would be useful to detect among multiple male DNA samples, he claims never to have engaged in sex with the victim. Given this contention, there is no reason to believe multiple male DNA would be discovered should this test be utilized. Because the only two purposes for utilizing the Y-STR test do not pertain under these circumstances, Wynn has failed to meet his burden to show Y-STR testing would provide a reasonable likelihood of results that are more accurate and probative than the results of the 2000 STR test. *See* TEX. CODE CRIM. PROC. ANN. art. 64.01(b)(2).

---

[12]The only problem the report notes in regard to STR testing is in a situation where there is an insufficient quantity of male DNA cells, "conventional STR testing may not be able to identify the perpetrator because the limited quantity of male DNA may be masked by the female DNA. . . . Y-STR testing could be employed in such an event in order to target the limited male DNA present in the sample, ignoring the female DNA."

12

Even should the Y-STR test have revealed the presence of more than one male donor, this finding would not exculpate Wynn, but would merely add another person to the mix. In *Bell v. State*, 90 S.W.3d 301 (Tex. Crim. App. 2002), the Texas Court of Criminal Appeals reviewed a claim in which the appellant sought to demonstrate the possibility of his innocence by proving that someone else's DNA was at the scene of the crime. The court determined that without more, the presence of another person's DNA at the crime scene would not constitute affirmative evidence of the appellant's innocence and that therefore, the denial of DNA testing did not violate appellant's due process rights. *Id.* at 306.

The same reasoning applies here. The presence of more than one male donor would not constitute affirmative evidence of Wynn's innocence. Moreover, the recovery of additional DNA would not determine the identity of the person who committed the offense and therefore would not exculpate Wynn. *See Prible v. State*, 245 S.W.3d 466, 470 (Tex. Crim. App. 2008) (mere presence of another person's DNA at crime scene does not constitute affirmative evidence of defendant's innocence).

Because Wynn has failed to establish by a preponderance of the evidence that he would not have been convicted if the evidence were retested and determined to contain additional DNA, we overrule Wynn's first point of error.

13

**B.     Wynn's Due Process and Due Course of Law Claims Fail**

Wynn contends that Article 38.35 of the Texas Code of Criminal Procedure is unconstitutional as applied because it permits the use of test results from the Garland DPS laboratory (which was not an accredited laboratory in 2000, when the original DNA testing was performed) to be used against him.[13]   The primary problem with that contention is that there was no such accreditation requirement in existence at that time.

In 2000, the year of Wynn's conviction, Article 38.35 of the Texas Code of Criminal Procedure did not restrict the admissibility of forensic evidence to evidence emanating only from accredited forensic analysis facilities.   TEX. CODE CRIM. PROC. ANN. art. 38.35.[14]   In 2003, Article 38.35 was amended to require that

_____

[13]Garland DPS laboratory initially became accredited in 2002.

[14]In 2000, Article 38.35 stated:

> (a)     In this article:

> (1)     "Forensic analysis" means a medical, chemical, toxicologic, ballistic, or other expert examination and test performed on physical evidence for the purpose of determining its connection to a criminal action.

> (2)     "Physical evidence" means any tangible object, thing, or substance relating to a criminal offense.

> (b)     A law enforcement agency may procure a forensic analysis of physical evidence obtained in connection with the agency's investigation of a criminal offense.

> (c)     A law enforcement agency, other governmental agency, or private entity performing a forensic analysis of physical evidence may require the requesting law enforcement agency to pay a fee for such analysis.

14

[p]hysical evidence subjected to a forensic analysis, and testimony regarding the evidence, under this article is not admissible in a criminal case if, at the time of the analysis or the time the evidence is submitted to the court, the crime laboratory or other entity conducting the analysis was not accredited by the Department of Public Safety under Section 411.025, Government Code.

Act of May 28, 2003, 78th Leg., R.S., ch. 698, § 3, 2003 Tex. Gen. Laws 2128 (current version at TEX. CODE CRIM. PROC. ANN. art. 38.35). In 2005, the foregoing provision was amended to its current version.[15] The 2005 Act contains specific provisions providing for prospective application.[16] Even in the absence of this language, statutes are presumed to be prospective in

Act of May 25, 1991, 72nd Leg., R.S., ch. 298, 1991 Tex. Gen. Laws 1262 (current version at TEX. CODE CRIM. PROC. ANN. art. 38.35).

[15]Article 38.35 provides:

Except as provided by Subsection (e), a forensic analysis of physical evidence under this article and expert testimony relating to the evidence are not admissible in a criminal action if, at the time of the analysis, the crime laboratory conducting the analysis was not accredited by the director under Section 411.0205, Government Code.

TEX. CODE CRIM. PROC. ANN. art. 38.35(d)(1).

[16]One such provision is Section 21 of the Act, which provides:

Article 38.35, Code of Criminal Procedure, as amended by this Act, applies only to the admissibility of physical evidence in a criminal proceeding that commences on or after the effective date of this Act. The admissibility of physical evidence in a criminal proceeding that commenced before the effective date of this Act is governed by the law in effect at the time the proceeding commenced, and that law is continued in effect for that purpose.

Act of May 30, 2005, 79th Leg., R.S., ch. 1224, § 21, 2005 Tex. Gen. Laws 3952, 3964 (current version at TEX. CODE CRIM. PROC. ANN. art. 38.35). Wynn complains that Section 21 is unconstitutional because it limits application of Article 38.35 prospectively, and thus prohibits his ability to complain of DNA testing admitted from an unaccredited laboratory. Section 21 is not codified in Article 38.01. See TEX. CODE CRIM. PROC. ANN. art. 38.01 (West Supp. 2011). Section 22 of the same Act states that "change in the law made by this Act applies to: . . . evidence tested or offered into evidence on or after the effective date of this Act. . . ." See Act of May 30, 2005, 79th Leg., R.S., ch. 1224, § 22, 2005 Tex. Gen. Laws 3952, 3964–65. Section 22 is likewise not codified in Article 38.01, but was nonetheless determined to be governing law. Honorable Nizam Peerwani, Tex. Att'y Gen. Op. No. GA-0866 (2011),

15

operation unless expressly made retrospective. *Goodlow v. State*, 766 S.W.2d 352, 354 (Tex. App.—Texarkana 1989, pet. ref'd); *see* TEX. GOV'T CODE ANN. § 311.022 (West 2005). The statute here does not expressly provide for retrospective application, and we find no evidence of legislative intent to make it retrospective. To the contrary, legislative intent plainly indicates this statute is to be prospective in operation.

Wynn contends the lack of restriction on the admissibility of forensic DNA evidence in his case violates his federal due process rights and equal protection rights under the Fourteenth Amendment, in reliance on *Ake v. Oklahoma*, 470 U.S. 68 (1985). *Ake* stands for the general proposition that when "a State brings its judicial power to bear on an indigent defendant in a criminal proceeding, it must take steps to assure that the defendant has a fair opportunity to present his defense." *Id*. at 76. In that case, the United States Supreme Court held that the State must assure the defendant access to a competent psychiatrist when a defendant demonstrates that his "sanity at the time of the offense is to be a significant factor at trial." *Id.* at 83.

Here, Wynn requested the assistance of a DNA expert to evaluate the issues surrounding STR versus Y-STR testing. The trial court appointed Cellmark to analyze these issues. Cellmark issued a detailed report addressing testing questions submitted by defense counsel and by the State. The trial court relied in large part on the information provided by Cellmark in concluding that further DNA testing was not warranted. Rather than being denied access to

---

2011 WL 4352017 (Tex. A.G.); *see* TEX. CODE CRIM. PROC. ANN. art. 38.01. From this we can infer Section 21 is governing law, despite its lack of codification. *But see Weaver v. Head*, 984 S.W.2d 744, 746 (Tex. App.—Texarkana 1999, no pet.) (attorney general's opinions are persuasive, but not binding on courts).

scientific evidence, Wynn was provided all of the information requested regarding Y-STR testing from an expert in the field. We do not find *Ake* to be on point.

Wynn further complains that the original DNA report, prepared by a nonaccredited laboratory, is flawed. The apparent "flaw" in the report is the conclusion that Wynn, "if he was Caucasian—was the person who's [sic] DNA matched that found from the victim." Wynn claims that if the amendments to Article 38.35 were retrospective, the inaccurate or flawed report issued by the Garland DPS laboratory would not be admissible. Wynn thus complains that his due process and equal protection rights have been violated.

A party challenging the constitutionality of a statute bears the burden "to show that in its operation the statute is unconstitutional as to him in his situation; that it may be unconstitutional as to others is not sufficient." *Santikos v. State*, 836 S.W.2d 631, 633 (Tex. Crim. App. 1992). When confronted with an attack on the constitutionality of a statute, "we will presume that the legislature acted in a constitutionally sound fashion" in the absence of contrary evidence. *Rodriguez v. State*, 93 S.W.3d 60, 69 (Tex. Crim. App. 2002).

Wynn's assertion that the Garland DPS report concluded that his DNA matched that of the victim only "if he was Caucasian" is incorrect.[17] Further, there is no evidence to suggest that STR testing is or was inaccurate in this case. Garland DPS laboratory was not required to be accredited to conduct forensic DNA testing in 2000. The fact that Garland DPS was not accredited at that

---

[17]As previously noted, the report merely lists probabilities. To the extent Wynn believes the report identifies his DNA as matching that of the victim only if he is Caucasian is an incorrect reading of the report.

time does not mean the results of its test were skewed, flawed, or otherwise incorrect or inaccurate. Because Wynn has failed to carry his burden to show that the statute is unconstitutional as applied to him, we overrule this point of error.

## III. Conclusion

We affirm the holding of the trial court.


Bailey C. Moseley
Justice

Date Submitted:    November 2, 2011
Date Decided:     November 23, 2011

Do Not Publish