In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-10-00226-CR

                                                ______________________________

 

 

                                     ERIC CARSON WYNN,
Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                       On Appeal from the 124th
Judicial District Court

                                                             Gregg County, Texas

                                                          Trial Court
No. 27805-B

 

                                                        
                                          

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                            Memorandum Opinion by Justice Moseley








                                                      MEMORANDUM OPINION

 

            In
2000, Eric Carson Wynn pled guilty to aggravated sexual assault, this plea
resulting in his conviction; he was sentenced to forty years’ imprisonment in
the Texas Department of Criminal Justice—Institutional Division.  In 2011, Wynn’s motion for the appointment of
counsel in connection with his request for further DNA testing was granted,
together with an expert in DNA testing. 
After two hearings, the trial court denied Wynn’s request for new DNA
testing, this order giving rise to the instant appeal.  Wynn claims the trial court erred in denying
new DNA testing and further claims that Article 38.35 of the Texas Code of
Criminal Procedure is unconstitutional as applied to him because it permitted
DNA evidence from a nonaccredited laboratory to be
used against him.  See Tex. Code Crim. Proc.
Ann. art. 38.35 (West Supp. 2011). 
We affirm the judgment of the trial court.

I.          Background

            Prior
to his conviction, Wynn never denied having committed the crime of aggravated
sexual assault as he had been charged; on the contrary, he confessed to the
crime.[1]  DNA testing, conducted in connection with the
investigation of the assault, showed results consistent with Wynn’s
confession.  The DNA test report,
authored by the Texas Department of Public Safety Garland Crime Laboratory
(Garland DPS), was offered as a part of the stipulated evidence.  The report concluded that

[t]he
DNA profile recovered from the sperm fraction of the vaginal swab is consistent
with the DNA profile of the suspect. 
Suspect Wynn cannot be excluded as the contributor of this stain.  The probability of observing this DNA profile
is approximately 1 in 1.069 quadrillion for Caucasians, 1 in 79.87 quadrillion
for Blacks, and 1 in 997 trillion for Hispanics.  Based on these probabilities, the suspect is
the source of the stain.

 

            In
his motion for further DNA testing,[2] Wynn
alleged for the first time that he did not commit the crime and maintained that
the requested Y-STR test would substantiate his claim of innocence.[3]  At Wynn’s request, the court appointed Orchid
Cellmark, Inc. as an independent DNA expert in order
to answer a specified list of questions regarding the differences between STR
and Y-STR testing and how test results might differ between the two.  Cellmark’s report
indicated that Y-STR testing (not available in 2000) “targets only male DNA,
ignoring all of the female DNA present in a sample.”  Further, Y-STR testing “is extremely useful in
obtaining male profiles from samples that have very limited quantity of male
DNA or samples where DNA from multiple male sources may be present.”  The issue of multiple sperm donors was
emphasized by Wynn, who alleges the victim was sexually active with an Hispanic
male at the time of the alleged assault.[4]  

            In
November 2010, a hearing was conducted on Wynn’s motion for DNA testing.  At that hearing, testimony from the
complaining witness, as given at the plea hearing in 2000, was read into the
record.  The complainant testified that
at the time of the hearing, she was five months pregnant as a result of the assault
and identified Wynn as the father of the child. 
Counsel for Wynn argued that Y-STR testing should be ordered to
determine whether there were multiple contributors to the DNA sample recovered
from the victim[5] and
whether, using more refined testing, Wynn was a contributor to that
sample.  The trial court took the matter
under advisement and reconvened the hearing the following month.  The trial court thereafter denied the motion
for DNA testing, making multiple findings of fact.[6]

            The
trial court concluded that Wynn failed to establish that the Y-STR testing
technique would be reasonably likely to provide results “that are more accurate
and probative than the STR forensic test conducted in 2000 as set forth in the
Garland Laboratory Report received in evidence in the trial of this case.”[7]  We agree with that conclusion.

II.        Analysis

A.        The Trial Court Did
Not Abuse Its Discretion in Refusing to Permit Additional DNA Testing

 

            Wynn
initially claims the trial court abused its discretion in refusing to permit
additional DNA testing because Y-STR testing was not available at the time of
the offense, there was evidence that implicates more than one DNA donor, and
Y-STR testing would provide the means of distinguishing between or among
multiple contributors of DNA.  

            The
denial of a request for post-conviction DNA testing is reviewed under a
bifurcated standard.  Rivera v. State, 89 S.W.3d 55, 59 (Tex.
Crim. App. 2002).  We defer to the trial
court’s findings of fact when they are supported by the record, and defer to
the trial court’s application of law to fact questions that turn on credibility
and demeanor.  Esparza v. State, 282 S.W.3d 913, 921 (Tex. Crim. App. 2009).  We apply a de novo standard of review to pure
legal issues.  Id.  We will sustain the decision
of the trial court if it is correct on any legal theory applicable to the
case.  State v. Ross, 32 S.W.3d 853, 855–56 (Tex. Crim. App. 2000).  This de novo review usually includes the
ultimate issue in post-conviction DNA testing cases:  i.e., whether “a reasonable probability exists
that exculpatory DNA tests would prove . . . innocence.”  Rivera, 89 S.W.3d at 59.

            Chapter
64 of the Texas Code of Criminal Procedure prescribes how a convicted person
may obtain an order for post-conviction DNA testing.  Such testing is permitted when the evidence
still exists in a condition conducive to DNA testing, the evidence has been
subjected to a reliable chain of custody, and identity was or is an issue in
the case.  Tex. Code Crim. Proc. Ann. art. 64.03(a)(1) (West Supp. 2011);
Hooks v. State, 203 S.W.3d 861, 863
(Tex. App.—Texarkana 2006, pet. ref’d).  There is no dispute these requirements are
satisfied. 

            Because
DNA testing was conducted in 2000, additional testing can be conducted only if
the biological material in possession of the State during trial can be
subjected to testing with newer testing techniques that provide a reasonable
likelihood of results that are more accurate and probative than the results of
the 2000 test.  See Tex. Code Crim. Proc.
Ann. art. 64.01(b)(2) (West Supp. 2011). 
In addition to that requirement, the convicted person must establish, by
a preponderance of the evidence, that a reasonable probability exists that he
“would not have been convicted if exculpatory results had been obtained through
DNA testing.”  Tex. Code Crim. Proc. Ann. art. 64.03(a)(1)(A)(i), (2)(A) (West Supp. 2011).  This burden is met “if the record shows that
exculpatory DNA test results, excluding the defendant as the donor of the
material, would establish, by a preponderance of the evidence, that the
defendant would not have been convicted.” Ex parte Gutierrez, 337 S.W.3d 883, 899 (Tex. Crim.
App. 2011).  However, if testing results
would “merely muddy the waters,” the statutory requirement that testing results
be exculpatory is not met.  Rivera, 89 S.W.3d at 59; Watkins v. State, 155 S.W.3d 631, 634
(Tex. App.—Texarkana 2005, no pet.).  

            Wynn
initially suggests that the results of STR testing[8]
performed in 2000 by the Garland DPS are inaccurate.  This supposition is based on an incorrect
interpretation of the report.  Wynn
claims that because the report details the probabilities that the DNA specimen
taken from him would match another Caucasian, as opposed to a black or an Hispanic,
is problematic.  Wynn argues that if the
true source of the stain with which Wynn’s DNA was matched is that of a black
or an Hispanic, he would be excluded as the source based on the probabilities
listed.  We find no merit in this
reasoning.[9]  Moreover, there is no evidence the STR
testing procedure utilized in 2000 was not scientifically reliable.  While STR testing has improved since 2000,
those improvements do not relate to the testing in this case and do not render
the previous testing technique which was employed as unreliable.[10] 

            Wynn
maintains, however, that the results of Y-STR testing would be more accurate
and probative than the results of the 2000 STR test, and further claims that
this newer test will determine the existence of another donor, thus exculpating
him from the crime.[11]  Wynn’s theory is that the victim became
pregnant by a man of Hispanic origin, one with whom he alleges that she was
sexually active in March 2000.  Wynn
further surmises that when the victim (who had a religious upbringing)
discovered that she was pregnant, she simply fabricated the story that Wynn had
assaulted her in order to avoid the embarrassment that a public revelation of
her sexual conduct would precipitate.  In
his affidavit, Wynn swore that “I did not commit aggravated sexual assault on,
or have sex with, [the victim] on or about the date alleged in the Information
in this case or at any other time.”  Wynn
does not claim the Y-STR test is needed because he and the Hispanic man both
had sex with the victim.  Instead, Wynn
claims that he never engaged in sexual activity with the victim, but the Hispanic
man did.

            The
STR test conducted in 2000 by the Garland DPS could not rule Wynn out as the
donor of the sperm.  The report states,
“Suspect Wynn cannot be excluded as the contributor of this stain.  The probability of observing this DNA profile
is approximately 1 in 1.069 quadrillion for Caucasians, 1 in 79.87 quadrillion
for Blacks, and 1 in 997 trillion for Hispanics.  Based on these probabilities, the suspect is
the source of this stain.”  The statute
requires a reasonable likelihood of more accurate and more probative test
results from a newer testing technique. 
When previous DNA testing has inculpated a convicted person, a newer
test will either confirm the accuracy of the previous test or impugn the
accuracy of the previous test by excluding the convicted person as the source
of the stain.  Wynn contends the Y-STR
test could, in fact, impugn the accuracy of the previous test by excluding him
as the source of the stain.  Yet, the Cellmark report did not support that conclusion in this
case.  The report explained that
conventional STR testing, as conducted in Wynn’s case in 2000, refers to 

testing
of the Short Tandem Repeats using Polymerase Chain Reaction (PCR).  Short Tandem Repeats are short segments of
DNA sequence that are repeated multiple times in an individual’s DNA sequence.  The number of times a specific DNA sequence
is repeated differs from person to person. 
That different repetition number makes the DNA profile of each
individual unique to him/herself, except for identical twins who share
identical DNA profiles. . . . PCR works like a Xerox copy machine making
multiple copies of the targeted DNA sequence. 
This DNA can be analyzed using specialized genetic analyzers and the DNA
profile of an individual can then be determined.  Y-STR testing is a technique . . . very
similar to STR testing but different in that Y-STR testing targets only male
DNA, ignoring all of the female DNA present in a sample.  Whereas, STR testing targets human DNA in a
sample, both male and female, Y-STR testing targets human male DNA only.  The same PCR technique used for STR testing
is used for Y-STR testing to target specific repeats that are only located on
the Y-chromosome which is exclusive to males. 


 

Because Y-STR targets only male
DNA, “Y-STR testing is extremely useful in obtaining male profiles from samples
that have very limited quantity of male DNA or samples where DNA from multiple
male sources may be present.”  Otherwise,
“[t]he only difference is that STR testing obtains profiles from all human DNA
present in a sample (male and female) whereas Y-STR testing obtains only a male
profile from a sample disregarding all of the female DNA.”[12] 

            Here,
there is no claim of limited male DNA which would necessitate use of Y-STR
testing.  While Wynn claims this test
would be useful to detect among multiple male DNA samples, he claims never to
have engaged in sex with the victim. 
Given this contention, there is no reason to believe multiple male DNA
would be discovered should this test be utilized.  Because the only two purposes for utilizing
the Y-STR test do not pertain under these circumstances, Wynn has failed to
meet his burden to show Y-STR testing would provide a reasonable likelihood of
results that are more accurate and probative than the results of the 2000 STR
test.  See Tex. Code Crim. Proc.
Ann. art. 64.01(b)(2).  

            Even
should the Y-STR test have revealed the presence of more than one male donor,
this finding would not exculpate Wynn, but would merely add another person to
the mix.  In Bell v. State, 90 S.W.3d 301 (Tex. Crim. App. 2002), the Texas
Court of Criminal Appeals reviewed a claim in which the appellant sought to
demonstrate the possibility of his innocence by proving that someone else’s DNA
was at the scene of the crime.  The court
determined that without more, the presence of another person’s DNA at the crime
scene would not constitute affirmative evidence of the appellant’s innocence
and that therefore, the denial of DNA testing did not violate appellant’s due
process rights.  Id. at 306.  

            The
same reasoning applies here.  The
presence of more than one male donor would not constitute affirmative evidence
of Wynn’s innocence.  Moreover, the
recovery of additional DNA would not determine the identity of the person who
committed the offense and therefore would not exculpate Wynn.  See Prible v. State, 245 S.W.3d 466, 470 (Tex. Crim. App.
2008) (mere presence of another person’s DNA at crime scene does not constitute
affirmative evidence of defendant’s innocence). 


            Because
Wynn has failed to establish by a preponderance of the evidence that he would
not have been convicted if the evidence were retested and determined to contain
additional DNA, we overrule Wynn’s first point of error.  

            B.        Wynn’s
Due Process and Due Course of Law Claims Fail

            Wynn
contends that Article 38.35 of the Texas Code of Criminal Procedure is
unconstitutional as applied because it permits the use of test results from the
Garland DPS laboratory (which was not an accredited laboratory in 2000, when
the original DNA testing was performed) to be used against him.[13]  The primary problem with that contention is
that there was no such accreditation requirement in existence at that time.

            In
2000, the year of Wynn’s conviction, Article 38.35 of the Texas Code of
Criminal Procedure did not restrict the admissibility of forensic evidence to
evidence emanating only from accredited forensic analysis facilities.  Tex.
Code Crim. Proc. Ann. art. 38.35.[14]  In 2003, Article 38.35 was amended to require
that

[p]hysical evidence subjected to a forensic analysis, and
testimony regarding the evidence, under this article is not admissible in a
criminal case if, at the time of the analysis or the time the evidence is
submitted to the court, the crime laboratory or other entity conducting the
analysis was not accredited by the Department of Public Safety under Section
411.025, Government Code.

 

Act of May 28, 2003, 78th Leg.,
R.S., ch. 698, § 3, 2003 Tex. Gen. Laws 2128 (current
version at Tex. Code Crim. Proc. Ann.
art. 38.35).  In 2005, the foregoing
provision was amended to its current version.[15] The
2005 Act contains specific provisions providing for prospective application.[16]  Even in the absence of this language,
statutes are presumed to be prospective in operation unless expressly made
retrospective.  Goodlow v. State, 766 S.W.2d
352, 354 (Tex. App.—Texarkana 1989, pet. ref’d); see Tex.
Gov’t Code Ann. § 311.022 (West 2005).  The statute here does not expressly provide
for retrospective application, and we find no evidence of legislative intent to
make it retrospective.  To the contrary,
legislative intent plainly indicates this statute is to be prospective in
operation.  

            Wynn
contends the lack of restriction on the admissibility of forensic DNA evidence
in his case violates his federal due process rights and equal protection rights
under the Fourteenth Amendment, in reliance on Ake v. Oklahoma, 470 U.S. 68 (1985). 
Ake
stands for the general proposition that when “a State brings its judicial power
to bear on an indigent defendant in a criminal proceeding, it must take steps
to assure that the defendant has a fair opportunity to present his defense.”  Id.
at 76.  In that case, the United States Supreme
Court held that the State must assure the defendant access to a competent
psychiatrist when a defendant demonstrates that his “sanity at the time of the
offense is to be a significant factor at trial.”  Id.
at 83.  

            Here,
Wynn requested the assistance of a DNA expert to evaluate the issues
surrounding STR versus Y-STR testing. 
The trial court appointed Cellmark to analyze
these issues.  Cellmark
issued a detailed report addressing testing questions submitted by defense
counsel and by the State.  The trial
court relied in large part on the information provided by Cellmark
in concluding that further DNA testing was not warranted.  Rather than being denied access to scientific
evidence, Wynn was provided all of the information requested regarding Y-STR
testing from an expert in the field.  We
do not find Ake to be on point.  

            Wynn
further complains that the original DNA report, prepared by a nonaccredited laboratory, is flawed.  The apparent “flaw” in the report is the
conclusion that Wynn, “if he was Caucasian—was the person who’s [sic] DNA
matched that found from the victim.” 
Wynn claims that if the amendments to Article 38.35 were retrospective,
the inaccurate or flawed report issued by the Garland DPS laboratory would not
be admissible.  Wynn thus complains that
his due process and equal protection rights have been violated.  

            A
party challenging the constitutionality of a statute bears the burden “to show
that in its operation the statute is unconstitutional as to him in his situation;
that it may be unconstitutional as to others is not sufficient.”  Santikos v. State,
836 S.W.2d 631, 633 (Tex. Crim. App. 1992). 
When confronted with an attack on the constitutionality of a statute,
“we will presume that the legislature acted in a constitutionally sound
fashion” in the absence of contrary evidence. 
Rodriguez v. State, 93 S.W.3d 60, 69 (Tex. Crim. App. 2002).  

            Wynn’s
assertion that the Garland DPS report concluded that his DNA matched that of
the victim only “if he was Caucasian” is incorrect.[17]  Further, there is no evidence to suggest that
STR testing is or was inaccurate in this case. 
Garland DPS laboratory was not required to be accredited to conduct
forensic DNA testing in 2000.  The fact
that Garland DPS was not accredited at that time does not mean the results of
its test were skewed, flawed, or otherwise incorrect or inaccurate.  Because Wynn has failed to carry his burden
to show that the statute is unconstitutional as applied to him, we overrule
this point of error.  

III.       Conclusion

            We
affirm the holding of the trial court. 

 

 

                                                                        Bailey
C. Moseley

                                                                        Justice

 

Date Submitted:          November 2, 2011

Date Decided:             November 23, 2011

 

Do Not Publish

 











[1]The
stipulation of evidence signed by Wynn states, in part, that

 

on the 19th day of March, 2000, in
the County of Gregg and State of Texas, I, ERIC CARSON WYNN did then and there
intentionally and knowingly cause the penetration of the female sexual organ of
[the victim] by the defendant’s sexual organ, without the consent of [the
victim], and the defendant did then and there by acts and words threaten and
place [the victim] in fear that death or serious bodily injury would be
imminently inflicted on [the victim] and said acts and words occurred in the
presence of [the victim] . . . as charged in the information.  





[2]The
trial court denied Wynn’s initial pro se motion for DNA testing in January
2002.  Wynn resubmitted his initial
motion in March 2002.  After the motion
as resubmitted was denied in April 2002, Wynn filed a new motion for DNA
testing and request for appointment of counsel. 
This motion was denied in December 2004. 
In January 2007, Wynn filed a petition for appointment of counsel, which
was granted.  In September 2009, the
trial court signed an order permitting withdrawal of counsel and appointment of
new counsel.  

 





[3]The
previous DNA test, performed in 2000, was an STR test.  Wynn now requests the more scientifically
advanced Y-STR test to prove his innocence. 






[4]The
report indicates that Y-STR testing may be a better way to detect a mixture of
multiple sperm contributors:

 

If the DNA is of a limited
quantity from the multiple sperm donors, it would be very unlikely to identify
the multiple sperm donors using conventional STR testing.  It may be very difficult to identify the
number of sperm donors and to identify them using STR testing even if the DNA
is of sufficient quantity. . . .  

                Since Y-STR testing only targets male DNA, it may be
easier to identify the number of male contributors in a sample using Y-STRs.  Although it is not always possible, it is
more likely to identify the number of male contributors in the sample using
Y-STRs rather than using conventional STRs. 


 





[5]In
Wynn’s affidavit attached to his motion for new trial, he claims that he did
not commit aggravated sexual assault and that at the time of the alleged
assault, the victim was sexually active “with a man named James Hill, who was
part Hispanic.”  He further claims the
child allegedly conceived as a result of the assault was in fact fathered by
Hill. Wynn claims his guilty plea was entered because he feared receiving a
life sentence.   





[6]The
findings of fact are:

 

1.             Defendant, Eric
Carson Wynn (“Wynn”) pled guilty to aggravated sexual assault of [the victim]
on August 11, 2000 arising out of an offense alleged to have occurred on or
about March 19, 2000.

 

2.             [The victim] testified that she had
met Wynn earlier in the evening of the assault, and was able to identify Wynn as
her attacker, independent of DNA evidence.

 

3.             Wynn’s blood was drawn and compared
to biological materials recovered from the sexual assault collection kit from
victim and submitted to the Garland DPS Laboratory, which submitted the
evidence to forensic DNA testing, and specifically, STR profiling.

 

4.             STR testing continues to be an
accredited and commonly used forensic DNA testing procedure.

 

5.             The Garland DPS Laboratory Report
received in evidence at the trial, without objection, states “The DNA profile
recovered from the sperm fraction of the vaginal swab is consistent with the
DNA profile of the Suspect.  Suspect Wynn
cannot be excluded as the contributor of this stain.  The probability of observing this DNA profile
is approximately 1 in 1.069 quadrillion for Caucasians, 1 in 79.87 quadrillion
for Blacks, and 1 in 997 trillion for Hispanics.  Based on these probabilities, the suspect is
the source of this stain.”

 

6.             Wynn is a Caucasian male.

 

7.             Wynn has not provided any credible
evidence to support his contention that the prior report of Garland DPS
laboratory should be subjected to further review.

 

8.             The Garland Laboratory was not
accredited at the time the Report received in evidence was prepared.

 

9.             The Garland Laboratory was subsequently
accredited in 2002, a year before accreditation was required by law.

 

10.          Y-STR DNA profiling, as a forensic DNA
testing procedure, “is specific to obtaining only male profiles from a sample,”
and “would be useful in obtaining profiles from samples that have very limited
quantity of male DNA or samples where DNA from multiple male sources may be
present.”

 

11.          There exists no evidence or
allegations before the Court that there was not a sufficient quantity of male
DNA in the sample tested.  

 

12.          There exists no evidence or
allegations before the Court that there were multiple male contributors of DNA
in the sample tested.  

 

13.          Identity was not an issue at the trial
of the case, and unrebutted testimony at trial or
found in stipulated evidence established that Wynn was known to the victim . .
. .  Wynn also judicially confessed to
the crime of sexual assault at the time the Plea of Guilty was accepted by the
Court.  

 

14.          Wynn has made identity an issue by
filing his Motion for Further DNA Testing.

 





[7]The
entirety of the trial court’s conclusions of law are:

 

1.             Under Section 64.01(b)(2), of the
Code of Criminal Procedure, Wynn can “request DNA testing only of evidence . .
. although previously subjected to DNA testing, can be subjected to testing
with newer testing techniques that provide a reasonable likelihood of results
that are more accurate and probative than the results of the previous
test.”  

 

2.             Under Section 64.03 of the Code of
Criminal Procedure, a convicting court may order forensic DNA testing “only
if:  1) the Court finds that:  A) the evidence: i)
still exists and is in a condition making DNA testing possible; and ii) has
been subjected to a chain of custody. . .; and B) identity was or is an issue
in the case; and 2) the convicted person establishes by a preponderance of
evidence that:  A) the convicted person
would not have been convicted if exculpatory results had been obtained through
DNA testing. . . .”

 

3.             Identity was not an issue at the
trial of this case.

 

4.             Wynn’s identity at trial was proved
by means independent of the DNA test results, specifically, the unrebutted statements of the victim . . . .  At the time Wynn entered his Plea of Guilty,
the victim’s allegations were unchallenged. 


 

5.             Wynn
has subsequently made identity an issue by filing his Motion for Further DNA
Testing and denying he had sexual relations with the victim . . . .  See Blacklock v. State, 235 S.W.3d 231 (Tex. Crim. App.
2007).  

 

6.             STR testing continues to be an
accredited and commonly used forensic DNA testing procedure.  

 

7.             Wynn has not established by a
preponderance of the evidence that the forensic testing procedure known as
Y-STR would be reasonably likely to provide results that are more accurate and
probative than the STR forensic test conducted in 2000 as set forth in Garland
Laboratory Report received in evidence in the trial of this case.  

 

8.             Wynn has not established by a
preponderance of the evidence that the STR forensic DNA test conducted in 2000
as set forth in the Garland Laboratory Report received in evidence in the trial
of this case was not reliable.   

 

9.             The provisions of Art. 38.35 TEX.
CODE CRIM. P. requiring accreditation of crime laboratories was effective as to
those offenses committed after its effective date.

 

10.          The Garland Laboratory was not
required to be accredited to conduct forensic DNA testing of DNA arising out of
an offense occurring on or about March 19, 2000.  

 

11.          The interests of justice do not
require further DNA testing.





[8]The
DNA analysis utilized in 2000 was known as short tandem repeats (STR) using
poly-chain reaction amplification. 

 





[9]Wynn
appears to argue that the Garland DPS report reveals the existence of three
possible donors—a Caucasian individual, an Hispanic individual, and a black
individual.  The report merely lists
probabilities the DNA would match each of three ethnic groups; it does not
point to the existence of three possible sperm donors.  The report indicates that if the DNA donor
was Caucasian, the odds that another donor exists with the same DNA in the
Caucasian group are one in 1.069 quadrillion. 
Likewise, if the DNA donor was black, the odds that another donor exists
with the same DNA in the black group are one in 79.87 quadrillion.  Finally, if the DNA donor was Hispanic, the
odds that another donor exists with the same DNA in the Hispanic group are one
in 997 trillion.  These numbers indicate
that if Wynn was Hispanic, the odds that he was the source of the stain are
marginally less.  The probability of
another donor with the same DNA is least among the Caucasian group.

 





[10]Improvements
in STR testing have to do with degraded DNA:

 

A new test called the mini-STR
test is now available which tests for degraded DNA.  This technique allows forensic scientists to
develop DNA profiles from very old samples that have been severely degraded
over time due to environmental factors and storage conditions.





 

[11]The
only evidence pointing to the possibility of another donor is Wynn’s
affidavit.  While Wynn alleges the victim
was sexually active with a man of Hispanic origin, there is no evidence the
victim engaged in sexual relations with this person during the time frame of
the aggravated sexual assault on the victim. 






[12]The
only problem the report notes in regard to STR testing is in a situation where
there is an insufficient quantity of male DNA cells, “conventional STR testing
may not be able to identify the perpetrator because the limited quantity of
male DNA may be masked by the female DNA. . . . Y-STR testing could be employed
in such an event in order to target the limited male DNA present in the sample,
ignoring the female DNA.”  





[13]Garland
DPS laboratory initially became accredited in 2002.  

 





[14]In
2000, Article 38.35 stated:

 

                (a)           In this article:

 

                (1)           “Forensic analysis” means a medical,
chemical, toxicologic, ballistic, or other expert
examination and test performed on physical evidence for the purpose of
determining its connection to a criminal action.

 

                (2)           “Physical evidence” means any
tangible object, thing, or substance relating to a criminal offense.

 

                (b)           A law enforcement agency may procure
a forensic analysis of physical evidence obtained in connection with the
agency’s investigation of a criminal offense.

 

                (c)           A law enforcement agency, other
governmental agency, or private entity performing a forensic analysis of
physical evidence may require the requesting law enforcement agency to pay a
fee for such analysis.

 

Act of May 25, 1991, 72nd Leg., R.S., ch. 298, 1991 Tex. Gen. Laws 1262 (current version at Tex. Code Crim. Proc. Ann. art. 38.35).

 





[15]Article
38.35 provides:

 

Except as provided by
Subsection (e), a forensic analysis of physical evidence under this article and
expert testimony relating to the evidence are not admissible in a criminal
action if, at the time of the analysis, the crime laboratory conducting the
analysis was not accredited by the director under Section 411.0205, Government
Code.

 

Tex. Code Crim.
Proc. Ann. art. 38.35(d)(1).

 





[16]One
such provision is Section 21 of the Act, which provides:

 

Article 38.35, Code of Criminal
Procedure, as amended by this Act, applies only to the admissibility of
physical evidence in a criminal proceeding that commences on or after the
effective date of this Act.  The admissibility
of physical evidence in a criminal proceeding that commenced before the
effective date of this Act is governed by the law in effect at the time the
proceeding commenced, and that law is continued in effect for that purpose. 

 

Act of May 30, 2005, 79th Leg., R.S., ch. 1224, § 21, 2005 Tex. Gen. Laws 3952, 3964 (current
version at Tex. Code Crim. Proc. Ann.
art. 38.35).  Wynn complains that Section
21 is unconstitutional because it limits application of Article 38.35
prospectively, and thus prohibits his ability to complain of DNA testing
admitted from an unaccredited laboratory. 
Section 21 is not codified in Article 38.01.  See
Tex. Code Crim. Proc. Ann. art.
38.01 (West Supp. 2011).  Section 22 of
the same Act states that “change in the law made by this Act applies to:  . . . evidence tested or offered into
evidence on or after the effective date of this Act. . . .”  See
Act of May 30, 2005, 79th Leg., R.S., ch. 1224, § 22,
2005 Tex. Gen. Laws 3952, 3964–65. 
Section 22 is likewise not codified in Article 38.01, but was
nonetheless determined to be governing law. 
Honorable Nizam
Peerwani, Tex. Att’y
Gen. Op. No. GA-0866 (2011), 2011 WL 4352017 (Tex. A.G.); see Tex. Code Crim. Proc.
Ann. art. 38.01.  From this we can
infer Section 21 is governing law, despite its lack of codification.  But see
Weaver v. Head, 984 S.W.2d 744, 746
(Tex. App.—Texarkana 1999, no pet.) (attorney general’s opinions are
persuasive, but not binding on courts). 





[17]As
previously noted, the report merely lists probabilities.  To the extent Wynn believes the report identifies
his DNA as matching that of the victim only if he is Caucasian is an incorrect
reading of the report.